No. 16-1297C
(Judge Patricia Campbell-Smith)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

FRANK MARRS, *et al.,*

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

REGINALD T. BLADES, JR.
Assistant Director

JOSEPH E. ASHMAN
Senior Trial Counsel

ERIN MURDOCK-PARK
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tele: (202) 353-7578
joseph.ashman@usdoj.gov

July 19, 2017                                    Attorneys for Defendant

## TABLE OF CONTENTS

**PAGE**

STATEMENT OF THE ISSUES.................................................................................. 1

STATEMENT OF THE CASE.................................................................................. 2

     I.    Nature Of The Case ......................................................................... 2

     II.   Statement Of Facts .......................................................................... 3

SUMMARY OF ARGUMENT ................................................................................ 6

ARGUMENT ......................................................................................................... 7

     I.    Standard Of Review ........................................................................ 7

     II.   The FLSA's Two-year Statute Of Limitations Should Apply To
           Plaintiffs' Claims Because The Government Did Not Intentionally
           Or Deliberately Disregard Its Obligations Under The FLSA During
           The Shutdown And, Therefore, Did Not Willfully Violate The
           FLSA ............................................................................................. 8

           A.    For The FLSA's Three-Year Statute Of Limitations To
                 Apply, A Violation Must Be Willful, Which Requires A
                 Finding That The Violating Conduct Was Intentional Or
                 Deliberate ............................................................................ 8

           B.    The Government Did Not Intentionally Or Deliberately
                 Violate The FLSA During The Shutdown Because There
                 Was No Avenue Of Compliance Available To The
                 Agencies, And Correctly Understood That The Anti-
                 Deficiency Act Prevented Compliance With The FLSA .......................... 10

           C.    Prior To The Shutdown, No Court Or Administrative Body
                 Had Ruled That The FLSA Would Displace The Anti-
                 Deficiency Act During A Lapse In Appropriations ................................. 12

CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Abbey v. United States,*
   106 Fed. Cl. 254 (2012) ........................................................................................... 9

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ............................................................................................... 7

*Angelo v. United States,*
   57 Fed. Cl. 100 (2003) ............................................................................ 8, 9, 10, 11

*Bull v. United States,*
   68 Fed. Cl. 212 (2005) ........................................................................................... 8

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ............................................................................................... 7

*Donald Martin, Jr. et. al v. United States,*
   117 Fed. Cl. 611 (2014) ...................................................................................... 4, 5

*Donald Martin, Jr., et. al v. United States,*
   130 Fed. Cl. 578 (2017) ................................................................................ *passim*

*Griffin & Griffin Exploration, LLC v. United States,*
   116 Fed. Cl. 163 (2014) ......................................................................................... 7

*McLaughlin v. Richland Shoe Co.,*
   486 U.S. 128 (1988) ............................................................................................... 8

*Moreno v. United States,*
   82 Fed. Cl. 387  (2008) .......................................................................................... 9

*Moreno v. United States,*
   88 Fed. Cl. 266 (2009) ........................................................................................... 8

*Salazar v. Ramah Navajo Chapter,*
   132 S. Ct. 2181 (2012) ......................................................................................... 12

*United States v. Zadeh,*
   No. 15-10195, 2016 WL 1612754 at *2 (5th Cir. Apr. 21, 2016) ........................... 12

**STATUTES**

29 U.S.C. § 255(a) ........................................................................................................ 1, 8

31 U.S.C. § 1342 ............................................................................................................. 3

31 U.S.C. §§ 1341 ........................................................................................................... 3

**REGULATIONS**

5 C.F.R. § 555.104 .......................................................................................................... 8

**RULES**

RCFC 56(c)(1) ................................................................................................................. 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FRANK MARRS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 16-1297C |
| | ) | (Judge Patricia Campbell-Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC) and this Court's order dated June 20, 2017, defendant, the United States, respectfully submits this response in opposition to plaintiffs' motion for partial summary judgment, and cross-motion for partial summary judgment on the issue of whether a two- or three-year statute of limitations period applies to plaintiffs' claims.  Because there exists no issue of material fact precluding judgment on a dispositive motion, the Court should grant the Government's cross-motion, deny plaintiffs' motion, and enter judgment in the Government's favor.

**STATEMENT OF THE ISSUES**

Whether the three-year statute of limitations for claims brought under the Fair Labor Standards Act, 29 U.S.C. § 255(a) (FLSA), applies to plaintiffs' claims related to work allegedly performed during the 2013 Government shutdown (the shutdown), when the undisputed facts establish that the Government did not willfully violate the FLSA by not paying FLSA non-exempt, excepted employees on their next regularly scheduled pay day for work performed during the first week of the shutdown.

**STATEMENT OF THE CASE**

I.      **Nature Of The Case**

Plaintiffs allege that they are current or former Federal employees that were classified as excepted employees by their employing agency and worked during the first week of the shutdown.  Plaintiffs brought this action alleging that the Government violated the FLSA, by not paying plaintiffs the statutory minimum wage for that alleged work on their next regularly scheduled pay day.  Compl. ¶¶ 34-37.  Plaintiffs also assert that the Government violated the FLSA by not paying excepted employees the statutorily required overtime rate for overtime work allegedly performed during the first week of the shutdown.  Compl. ¶¶ 38-42.

Soon after commencement of this action, the Court consolidated this case with the related case *Donald Martin, Jr., et al. v. United States*, Fed. Cl. 13-834C, for the purposes of determining the Government's liability to pay liquidated damages for a violation of the FLSA during the shutdown.  ECF Dkt. No. 9.  The Court has ruled that the Government violated the FLSA by failing to pay "non-exempt," excepted employees on their next regularly scheduled payday their regular and overtime wages for work performed during the first week of the shutdown, and that the Government must pay plaintiffs liquidated damages for that violation. *See Donald Martin, Jr., et. al v. United States*, 130 Fed. Cl. 578 (2017) (*Martin II*).  The only issue remaining to be determined in this case pertaining to liability is whether the FLSA's two- or three-year statute of limitations applies to plaintiffs' claims.  ECF Dkt. No. 9.

II.     **Statement Of Facts**

Because of a lapse in appropriations, the Federal Government ceased certain non-excepted operations and services from October 1 through 16, 2013. *See* Stipulations of Fact Not in Dispute (SoF) ¶ 1; Appendix. Certain Government employees funded through annual appropriations were designated as excepted employees for purposes of the Anti-Deficiency Act, 31 U.S.C. §§ 1341, *et seq.*, and were required to work during the shutdown because they would provide services that involve "the safety of human life or the protection of property." *Id.* (citing 31 U.S.C. § 1342).

The Government understood that, during a lapse in appropriations, the Anti-Deficiency Act prohibited payment of wages for work performed during the shutdown until funds had been appropriated for that purpose. SoF ¶ 2. The agencies that advise the Federal Government on the implementation of the FLSA did not, prior to the shutdown, consider whether requiring employees designated as "non-exempt" under the FLSA and as excepted for purposes of the shutdown to work during the shutdown without paying them minimum or overtime wages on their next regularly scheduled payday for work performed during the first week of the shutdown would violate the FLSA. SoF ¶ 3. Prior to the shutdown, the Government did not seek a formal legal opinion regarding how to meet its obligations under both the Anti-Deficiency Act and the FLSA as to employees designated as "non-exempt" under the FLSA and excepted for purposes of the shutdown who were required to work during the shutdown. SoF ¶ 4.

The Government did not pay employees who worked during the first week of the shutdown on the employees' next regularly scheduled payday for that work. SoF ¶ 7. After the

3

shutdown ended, the Government retroactively paid all such employees their basic wages for regular, non-overtime work performed during the first week of the shutdown, on or before the employees' next regularly scheduled paydays.  SoF ¶ 8.

Almost three years after the shutdown ended, plaintiffs brought this action alleging that the Government violated the FLSA by not paying plaintiffs on their next regularly scheduled payday for work performed during the first week of the shutdown.  Compl. ¶¶ 34-42.  Plaintiffs further alleged that the Government's violation of the FLSA was willful and, therefore, the FLSA's three-year statute of limitations period should apply to the action.  *Id*. at ¶¶ 36, 41.  As relief, plaintiffs seek liquidated damages in an amount of minimum and overtime wages that they allegedly should have received on their regularly scheduled payday for that work.  *Id*. at p. 25 of 26.

At the time this action commenced, the related case of *Martin* was pending before the Court.  The Court had already found in *Martin* that the Government's failure to pay "non-exempt," excepted employees on their next regularly scheduled payday for regular and overtime work performed during the first week of the shutdown violated the FLSA.  *See Donald Martin, Jr. et. al v. United States*, 117 Fed. Cl. 611 (2014) (*Martin I*).  The Court then directed the Government in *Martin* to identify and issue notice to all "non-exempt," excepted employees who worked the first week of the shutdown but who were not paid for that work on their next regularly scheduled payday of their right to join this collective action.  The notice period closed over a year-and-a-half after the Government's violation.  The parties then submitted cross-

motions for partial summary judgment on the issue of the Government's liability for liquidated damages for that violation.

With those motions pending in *Martin*, the Court, by order dated November 2, 2016, ordered this case to be consolidated with *Martin* "for purposes of determining the issue of defendant's liability for liquidated damages under the FLSA."  ECF Dkt. No. 9.  The Court accepted the parties' stipulation that, once the issue of liability is resolved, "the 'only issue to be resolved in this case is whether the FLSA's two or three year statute of limitations applies to plaintiffs.'"  *Id*.  Accordingly, the Court suspended proceedings in this case pending resolution of the parties' cross-motions for partial summary judgment in *Martin*.  *Id*.

On February 24, 2017, the Court granted the *Martin* plaintiffs' cross-motion for summary judgment, concluding that the Government's failure to pay plaintiffs' on their next regularly scheduled payday for regular and overtime work performed during the first week of the shutdown violated the FLSA, and the Government owed plaintiffs liquidated damages for that violation.  *Martin II*, 130 Fed. Cl. at 582-88.  The Court first concluded that the Anti-Deficiency Act did not operate to cancel defendant's obligations under the FLSA, reasoning that the act's requirements "apply to the official, but they do not affect the rights in this court of the citizen honestly contracting with the [g]overnment," and that the statute does not "cancel [the Government's] obligations, nor defeat the rights of other parties."  *Id*. at 583 (citations and quotations omitted).  The Court then held that defendant was liable for liquidated damages because defendant had not demonstrated good faith and reasonable grounds for believing its failure to pay did not violate the FLSA.  *Id*. at 584-86.  In doing so, the Court found persuasive

5

that "the government admittedly took no steps to determine its obligations under the FLSA

during the 2013 shutdown" other than believing that the ADA precluded the payment of wages

during a lapse in appropriations. *Id*. at 586.  Finally, the Court held that the Government "has

not satisfied the conditions under which late payment of overtime wages is permissible" because

the undisputed evidence showed that the Government was, in certain instances, able to calculate

the amount of overtime wages owed by the regularly scheduled payday, and that the

Government's failure to meet its FLSA obligations was within its control.  *Id*. at 586-87.

By order dated March 17, 2017, the Court dissolved the suspension in this case and

directed the parties to submit a briefing schedule for the present dispositive motions addressing

the issue of which FLSA statute of limitations period should apply to plaintiffs' claims.  ECF

Dkt. No. 13.

## SUMMARY OF ARGUMENT

The FLSA's two-year statute of limitations should apply to plaintiffs' claims because the

Government did not intentionally or deliberately disregard its obligations under the FLSA during

the shutdown and, therefore, the Government did not willfully violate the FLSA.  During the

shutdown, Government officials correctly understood that the Anti-Deficiency Act precluded

payment of wages in the absence of appropriations for that purpose and, therefore, the officials

could not have complied with the FLSA.  The existence of this legal impediment prevents a

conclusion that the Government's failure to obtain a legal opinion concerning the application of

the FLSA during the shutdown constitutes a reckless disregard of the Government's obligations

– Government officials could not have met those obligations even if they had sought such an

opinion.  Moreover, at no time prior to the shutdown had a court or administrative body

concluded that the FLSA would displace the Anti-Deficiency Act during a lapse in

appropriations and, therefore, Government officials were not on notice that an FLSA violation

could occur during a shutdown.

For these reasons, which are more fully explained below, the Court should grant this

motion and apply the FLSA's two-year statute of limitations to plaintiffs' claims.

## ARGUMENT

### I.   Standard Of Review

"A moving party is entitled to summary judgment when there are no genuine issues of

material fact and the moving party is entitled to judgment as a matter of law."  *Griffin & Griffin*

*Exploration, LLC v. United States*, 116 Fed. Cl. 163, 172 (2014) (citing *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986)).  "A fact is material if it 'might affect the outcome of the suit under

the governing law.'"  *Id*. (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

"An issue is genuine if it 'may reasonably be resolved in favor of either party.'"  *Id*. (quoting

*Liberty Lobby*, 477 U.S. at 250)).

"The moving party bears the initial burden of showing that there are no genuine issues of

material fact."  *Id*. (citing *Celotex Corp*., 477 U.S. at 323).  "The burden then shifts to the

nonmoving party to show that there are genuine issues of material fact for trial."  *Griffin &*

*Griffin*, 116 Fed. Cl. at 172 (citing *Celotex Corp*., 477 U.S. at 324).

> Both parties may carry their burden by "citing to particular
> parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or
> declarations, stipulations (including those made for
> purposes of the motion only), admissions, interrogatory
> answers, or other materials" or by "showing that the
> materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce
> admissible evidence to support the fact."

*Id*. (quoting RCFC 56(c)(1)).

**II.** **The FLSA's Two-year Statute Of Limitations Should Apply To Plaintiffs' Claims Because The Government Did Not Intentionally Or Deliberately Disregard Its Obligations Under The FLSA During The Shutdown And, Therefore, Did Not Willfully Violate The FLSA**

    **A.** **For The FLSA's Three-Year Statute Of Limitations To Apply, A Violation Must Be Willful, Which Requires A Finding That The Violating Conduct Was Intentional Or Deliberate**

An FLSA "cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The Office of Personnel Management's (OPM) FLSA-implementing regulations define "willful violation" to mean "a violation in circumstances where the agency knew that its conduct was prohibited by the Act or showed reckless disregard of the requirements of the Act. All of the facts and circumstances surrounding the violation are taken into account in determining whether a violation was willful." 5 C.F.R. § 555.104. "The burden of proving an employer's willfulness falls on the employees." *Moreno v. United States*, 88 Fed. Cl. 266, 277 (2009). In this case, plaintiffs do not allege that the Government "knew that its conduct was prohibited by the Act," but that it "showed reckless disregard of the requirements of the Act." Pls. MSJ at 19-24.

OPM defines "reckless disregard" to mean "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104; *see also Bull v. United States*, 68 Fed. Cl. 212, 272-73, *decision clarified*, 68 Fed. Cl. 276 (2005), *aff'd*, 479 F.3d 1365 (Fed. Cir. 2007). However, "there is more to the definition of 'reckless disregard' than the OPM regulations would imply." *Angelo v. United States*, 57 Fed. Cl. 100, 109 (2003). The Supreme Court explains that "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, then, . . . it should not be so considered [willful] . . . ." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.13 (1988). This Court further explains that "a 'failure to make adequate inquiry,' if the regulation is to be read consistently with *McLaughlin*, must be more than a merely negligent or unreasonable failure." *Abbey v. United States*, 106 Fed. Cl. 254, 282 (2012); *see also Moreno v. United States*, 82 Fed. Cl. 387, 396 n.24  (2008). In order to determine whether an employer's "failure to make adequate inquiry" was negligent or unreasonable, or willful, the Court examines whether the failure tended towards "intentional" or "deliberate" conduct. *See, e.g.*, *Moreno*, 82 Fed. Cl. at 397 ("The Supreme Court has indicated that, for an employer to have knowingly or recklessly disregarded its FLSA obligations, its actions must tend toward 'intentional' or 'deliberate' conduct," and "[s]omething more than unreasonable or 'merely negligent' conduct is required."); *Angelo*, 57 Fed. Cl. at 109 (explaining that "[t]he Court [in *McLaughlin*] even rejected an intermediate standard. 'If an employer acts unreasonably, but not recklessly, in determining its legal obligation,' then its action is not willful. Under this standard, and given that the burden of proof is on the Plaintiffs, [defendant-

employer's] failure to consider one criterion, although perhaps unreasonable and negligent, was not 'deliberate' or 'intentional' and thus not willful" (citation omitted).).

For the Court to conclude that the Government's conduct during the shutdown showed "reckless disregard" of the FLSA, the Government's conduct must have been "deliberate" or "intentional."  The undisputed facts demonstrate that the Government did not deliberately or intentionally fail to consider how it could comply with the FLSA during a lapse in appropriations.  It therefore cannot be concluded that the Government willfully violated the FLSA.

      **B.**      **The Government Did Not Intentionally Or Deliberately Violate The FLSA During The Shutdown Because There Was No Avenue Of Compliance Available To The Agencies, And Government Officials Correctly Understood That The Anti-Deficiency Act Prevented Compliance With The FLSA**

The Government understood that, during the lapse in appropriations, the Anti-deficiency Act prohibited payment of wages for work performed during the shutdown until funds had been appropriated for that purpose.  SoF ¶ 2.  In *Martin II*, the Court did not conclude that the Government's understanding was wrong – only that the Anti-deficiency Act did not cancel plaintiffs' rights under the FLSA.   130 Fed. Cl. at 582-84.  Although the Government did not seek a formal legal opinion regarding how to meet its obligations under both the Anti-deficiency Act and FLSA during the lapse in appropriations, SoF ¶ 4, that fact cannot support a finding of "willfulness" because the Government understood – correctly – that it was legally barred from complying with both statutes.  Although it may have been unreasonable for the Government not to seek a formal legal opinion on the issue, doing so would only have confirmed what the

10

Government already knew:  that no avenue of compliance with the FLSA was available to the agencies during a lapse in appropriations.

The facts of this case are similar to those in *Angelo*, and the Court concluded that the Government's violation of the FLSA was not willful even though a Government official failed to make a necessary inquiry into whether certain employees were non-exempt.  57 Fed. Cl. 100, 109 (2003).  Specifically, the official incorrectly classified certain Boarder Patrol officers as exempt without considering the criteria of whether the officers engaged in supervisory activities. *Id*. at 105-06.  The Court observed that the official's "review of the position descriptions and the regulations was woefully inadequate."  *Id*. at 106.  The Court, however, concluded that the official did not act in reckless disregard of the FLSA.  In doing so, the Court stated that, "[o]n first glance, it might seem apparent that [the official] did not make 'adequate inquiry' as to the required criterion . . . because she admitted in her deposition that she did not even 'think in [those] terms.'"  *Id*. at 109.  The Court reasoned, though, that, under *McLaughlin*, the evidence must show "deliberate" and "intentional" conduct, and that, under this standard, the official's "failure to consider one criterion, although perhaps unreasonable and negligent, was not 'deliberate' or 'intentional' and thus not willful."  *Id*.

In this case, there is no evidence to suggest that the Government deliberately or intentionally chose not to inquire about its obligations under the FLSA during the shutdown.  It is undisputed that the Government officials were aware that they were under a legal impediment from taking the only action that could have allowed compliance with the FLSA – *i.e*., paying employees on time in the absence of an appropriation for that purpose.  Although, perhaps, the

11

Government should have sought a formal legal opinion confirming what was already known,

failure to do so was not an intentional or deliberate act, and therefore not reckless.

**C.      Prior To The Shutdown, No Court Or Administrative Body Had Ruled That
The FLSA Would Displace The Anti-Deficiency Act During A Lapse In
Appropriations**

In their motion, plaintiffs assert that the Government's conduct in not considering its

obligations during the shutdown was reckless because the Department of Labor's Wage and

Hour Division (DOL) had already instructed certain states that the FLSA's requirements would

preempt a state anti-deficiency provision during a state budgetary impasse.  Pls. Mot. at 21-22.

Although DOL had given this guidance to the states, it was inapplicable to the Federal

Government because it was grounded in the doctrine of pre-emption, which means, of course,

that "a federal law supersedes or supplants an inconsistent state law or regulation."  *United States*

*v. Zadeh*, 2016 WL 1612754, at *2 (5th Cir. Apr. 21, 2016).  Prior to the shutdown, no court or

administrative body had addressed the primacy of the FLSA over the Anti-Deficiency Act or

otherwise resolved the apparent conflict of these two Federal statutes.  *See* SOF ¶ 3 ("[T]he

agencies that advise the Federal Government on the implementation of labor law and policy did

not prior to or during the 2013 Government shutdown consider whether requiring employees

designated as 'non-exempt' under the [FLSA] and as 'excepted' for purposes of the shutdown to

work during the shutdown without paying them minimum or overtime wages on their next

regularly scheduled paydays for work performed during the first week of the shutdown would

violate the FLSA.").  DOL's guidance to states concerning the effect of the FLSA during state

12

government shutdowns therefore has no bearing on whether Federal Government officials intentionally or deliberately disregarded the FLSA during the shutdown.

Plaintiffs also argue that it was reckless for the Government to disregard the Supreme Court's decision in *Salazar v. Ramah Navajo Chapter*, 132 S. Ct. 2181 (2012), which held that the Anti-Deficiency Act does not "cancel [the Government's] obligations" and "do[es] not affect the rights in this court of the citizen honestly contracting with the Government."  *Id*. at 2193; Pls. Mot. at 22.  That case, however, was a contract matter and did not involve the FLSA at all, and certainly did not address the Government's obligations to continue paying employees in the absence of appropriations for that purpose.  Moreover, the Government has never asserted in this case that it was not obligated to pay employees for work performed, and as soon as appropriations were made available, the Government paid all employees the full amount of all wages due for work performed.  SoF ¶ 8.  It remains that there was no avenue available to Government officials that would have allowed compliance with both the FLSA and the Anti-Deficiency Act.  As such, that Government officials did not seek a formal legal opinion stating what was already known is not sufficient to support a conclusion that the officials "intentionally" or "deliberately" disregarded the FLSA.  The Government therefore did not willfully violate the FLSA, and the Court should find that the FLSA's two-year statute of limitations applies to plaintiffs' claims.

## **CONCLUSION**

For these reasons, we respectfully request that the Court grant our motion for partial summary judgment, and deny plaintiffs' motion for partial summary judgment.

Respectfully submitted,


CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director


s/Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director


s/Joseph E. Ashman
JOSEPH E. ASHMAN
Senior Trial Counsel

ERIN MURDOCK-PARK
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 353-7578
joseph.ashman@usdoj.gov

Dated:  July 19, 2017                    Attorneys for Defendant

14

# APPENDIX

# **INDEX TO APPENDIX**

<u>Document</u>

Joint Motion To Enter Stipulations Of Fact,
  *Donald D. Martin, JR., et al., v. United States*,
  Fed. Cl. No. 13-834C, ECF Dkt. No. 151

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DONALD D. MARTIN, JR., *et al.*,   )
   )
             Plaintiffs,   )
   )
        v.   )         No. 13-834C
   )   (Chief Judge Patricia Campbell-Smith)
   )
THE UNITED STATES,   )
   )
          Defendant.   )

## JOINT MOTION TO ENTER STIPULATIONS OF FACT

Pursuant to Appendix A, paragraph 17 of the Rules of the United States Court of Federal

Claims, the parties respectfully request that the Court enter the attached stipulations of fact into

the record of this action.

Respectfully submitted,

s/Heidi R.Burakiewicz             BENJAMIN C. MIZER
HEIDI R. BURAKIEWICZ        Principal Deputy Assistant Attorney General
Mehri & Skalet, PLLC
11250 Connecticut Ave., NW      ROBERT E. KIRSCHMAN, JR.
Suite 300                  Director
Washington, D.C. 20036
(202) 822-5100            s/Reginald T. Blades, Jr.
                      REGINALD T. BLADES, JR.
                      Assistant Director
Steven A. Skalet
Michael Lieder              s/Joseph E. Ashman
Taryn Wilgus Null         JOSEPH E. ASHMAN
Mehri & Skalet PLLC        ERIN MURDOCK-PARK
1250 Connecticut Avenue NW     Trial Attorney
Suite 300                  Commercial Litigation Branch
Washington, DC 20036        Department of Justice-Civil Division
(202) 822-5100            P.O. Box 480
                      Ben Franklin Station
                      Washington, D.C.  20044
                      (202) 353-7578

Attorneys for Plaintiffs        Attorneys for Defendant

March 31, 2016

# ATTACHMENT

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DONALD D. MARTIN, JR., *et al.*,           )
                                            )
                    Plaintiffs,            )
                                            )
        v.                                  )           No. 13-834C
                                            )    (Chief Judge Patricia Campbell-Smith)
                                            )
THE UNITED STATES,                          )
                                            )
                    Defendant.             )

## STIPULATION OF FACTS NOT IN DISPUTE

Pursuant to Appendix A, paragraph 17 of the Rules of the United States Court of Federal Claims, plaintiffs, Donald Martin, Jr., Patricia Manbeck, Jeff Roberts, Jose Rojas and Randall Sumner, and defendant, the United States, stipulate to the following facts, which stipulations the parties agree may be used only for purposes of this case.

## STIPULATED FACTS

1.      Because of a lapse in appropriations, the Federal Government ceased certain non-essential operations and services from October 1 through October 16, 2013 (the 2013 Government shutdown).  Certain Government employees funded through annual appropriations were designated as "excepted" employees for purposes of the Anti-deficiency Act, 31 U.S.C. § 1341, *et seq.*, and required to work during the 2013 Government shutdown because they would provide services that involve "the safety of human life or the protection of property."  31 U.S.C. § 1342.

2.      The Government understood that during a lapse in appropriations the Anti-Deficiency Act, 31 U.S.C. § 1341(a), prohibited payment of wages for work performed during the 2013 Government shutdown until funds had been appropriated.

3.      Based upon the information received from relevant personnel and review of the relevant documents, the agencies that advise the Federal Government on the implementation of labor law and policy did not prior to or during the 2013 Government shutdown consider whether requiring employees designated as "non-exempt" under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and as "excepted" for purposes of the shutdown to work during the shutdown without paying them minimum or overtime wages on their regularly scheduled paydays for work performed during the first week of the shutdown would violate the FLSA.  Based upon the information described above, defendant is not aware of any other agency that considered the issue prior to or during the 2013 Government shutdown.

4.      The Government did not seek a formal legal opinion regarding how to meet its obligations under both the Anti-deficiency Act and FLSA as to employees designated as "non-exempt" under the FLSA and as "excepted" for purposes of the shutdown who were required to work during the shutdown.

5.      The Wage and Hour Division (WHD) of the Department of Labor administers the wage and hour provisions of the FLSA with respect to private employment, State governments and political subdivisions of a State.

6.      Since at least 1998, the WHD has interpreted the FLSA as follows:

a.      The failure to pay employees of State government required minimum wage and overtime premiums when due – *i.e.*, on the regularly scheduled payday for the work performed – constitutes a violation of the FLSA;

b.      The prompt payment requirement applies to State governments during a budget impasse, whether or not there is a provision of state law that limits expending non-appropriated funds; any such provision provides no defense to this requirement.

c.     Employees may recover liquidated damages pursuant to 29 U.S.C. §§ 216(b) and

260 as a result of a state or local government's failure to pay them minimum wages and

overtime wages for work performed during a pay period on their regularly scheduled

payday for that period.

7.     The Government did not pay employees who were designated as "non-exempt" under the

FLSA and as "excepted" for purposes of the 2013 Government shutdown for work performed

between October 1 and October 5, 2013, on their regularly scheduled paydays for that work.

8.     After the 2013 Government shutdown ended, the Government retroactively paid all such

employees their basic wages for regular, non-overtime work performed between October 1 and

October 5, 2013, on or before the employees' next regularly scheduled payday, but did not pay

them any liquidated damages, attorney fees or expenses.

9.     Paul DeCamp, who signed the letter Bates stamped by the Government as

US_Martin0000309-10, was the Administrator of the Wage and Hour Division of the

Employment Standards Administration, U.S. Department of Labor on August 14, 2007.  The

statements made in this letter were within the scope of the duties of Mr. DeCamp on August 14,

2007.  This letter was in fact sent to the addressee, the Honorable John R. Gordner, who is

identified in the letter as  the Chairman of the Labor and Industry Committee of the Senate of the

Commonwealth of Pennsylvania.

10.     Steven J. Mandel, who was shown as the person responsible for the letter Bates stamped

by the Government as US_Martin0000311-12, was on August 26, 2009, the Associate Solicitor

for Fair Labor Standards of the U.S. Department of Labor.  The person who signed the letter for

him was authorized to do so.  The statements made in this letter were within the scope of Mr.

Mandel's duties on August 26, 2009.  This letter was in fact sent to the addressee, Frank A.

Fisher, Chief Counsel of the Commonwealth of Pennsylvania.  The letter states that it was sent in response to a letter from Mr. Fisher (see paragraph 20 below).

11.      The letter Bates stamped by the Government as US_Martin0000313-14 was in fact sent to the addressee, Daniel P. O'Meara of the law firm of Montgomery, McCracken, Walker & Rhoads, LLP.  The statements made in this letter were within the scope of Mr. Mandel's duties on August 26, 2009.  The letter states that it was sent in response to a letter from Mr. O'Meara (see paragraph 21 below).

12.      The Wage and Hour Division of the U.S. Department of Labor issued the document stamped by the Government as US_Martin0000315-18 and entitled "Fact Sheet 70:  Frequently Asked Questions Regarding Furloughs and Other Reductions in Pay and Hours Worked Issues" in November 2009.  The Wage and Hour Division still makes the fact sheet available to the public and has not modified any of its responses to questions 1, 2, 9, 10 and 11.

13.      Corlis R. Sellers, who signed the opinion letter Bates stamped by the Government as US_Martin0000367-68, was an employee of the Government assigned to the Wage and Hour Division of the Employment Standards Administration, U.S. Department of Labor on July 20, 1998.  John R. Fraser, on whose behalf the letter was signed, was on July 20, 1998, the Acting Administrator of the Wage and Hour Division of the Employment Standards Administration of the U.S. Department of Labor.  The statements made in this opinion letter were within the scope of the duties of Mr. Fraser on July 20, 1998.  This is a copy of the opinion letter referenced in the documents discussed in paragraph 16 below, except that the name of the original recipient of the letter has been deleted.

14.      Alfonso Gristina, who wrote the emails Bates stamped by the Government as US_Martin0000535-37, was an employee of the Government assigned to the Wage and Hour

Division of the U.S. Department of Labor on July 14, 2009, as the Wilkes Barre, Pennsylvania

District Director.  The references to "LDs" in the phrase "+ an equal amount in LDs" in the

penultimate line of text in the email is to potential liquidated damages.  The statements made in

this email were within the scope of the duties of Mr. Gristina in July 2009, but were preliminary

estimates, pre-decisional, internal, and limited to the case at issue in the email because field

office employees are not authorized to make general policy statements for DOL; the statements

do not necessarily reflect the official position or policy of the Wage and Hour Division, or the

Department of Labor.

15.     George Ference, who wrote the email Bates stamped by the Government as

US_Martin0000538, was an employee of the Government assigned to the Wage and Hour

Division of the U.S. Department of Labor on July 20, 2009, as a Deputy Regional Administrator.

The reference to "LDs" in the phrase "$42,412,500 + an equal amount in LDs" toward the

bottom of the email is to potential liquidated damages.  The statements made in this email were

within the scope of the duties of Mr. Ference on July 20, 2009, but were preliminary estimates,

pre-decisional, internal, and limited to the case at issue in the email because field office

employees are not authorized to make general policy statements for DOL; the statements do not

necessarily reflect the official position or policy of the Wage and Hour Division, or the

Department of Labor.

16.     John L. McKeon, who sent one of the emails in the chain stamped by the Government as

US_Martin0000539-41, was the Deputy Administrator of the Wage and Hour Division of the

U.S. Department of Labor on September 1, 2009.  Corlis Sellers, a recipient of one of the emails

in the chain, was the Wage and Hour Regional Administrator of the U.S. Department of Labor

for the Northeast Region on September 1, 2009.  Mark Watson, Jr., another recipient of one of

the emails in the chain, was the Director of Enforcement for the Northeast Region of the Wage

and Hour Division of the U.S. Department of Labor on September 1, 2009.  The Wilkes Barre,

Pennsylvania District Director at the time, who is referred to as "WBDD" in this document, was

Alfonso Gristina.  Robert V. O'Brien, who is referred to on the page stamped as

US_Martin0000539, is identified as the Executive Deputy Secretary of Labor & Industry for the

Commonwealth of Pennsylvania.  Laura MacDonald, who sent another one of the emails in the

chain, was the Chief of Staff of the Office of Congressional and Intergovernmental Affairs of the

U.S. Department of Labor.  The email states that the information compiled by Mr. McKeon in

the email that begins on the page stamped as US_Martin0000539 was intended for use by the

U.S. Secretary of Labor, who was then Hilda L. Solis, in a call with Edward Rendell, the then-

Governor of the Commonwealth of Pennsylvania. The statements made in this email chain were

within the scope of the duties of the authors of the emails during the summer of 2009, but were

preliminary estimates, pre-decisional, and internal.  The statements made by the field office

employees are limited to the case at issue in the email chain.  The statements made in this email

chain do not necessarily reflect the official position or policy of the Wage and Hour Division, or

the Department of Labor.

17.     John L. McKeon, the addressee of one of the emails from George Ference stamped by the

Government as US_Martin0000561-63, was the Deputy Administrator  of the Wage and Hour

Division of the U.S. Department of Labor on July 15, 2009.  Mr. Ference, the author of the email

to Mr. McKeon, states in the email that he summarized the information in the articles pasted into

his email during July 2009.  His summary of the information in the articles was part of his duties,

but was pre-decisional, internal, and limited to the case at issue in the email because field office

employees are not authorized to make general policy statements for DOL; it does not necessarily

reflect the official position or policy of the Wage and Hour Division, or the Department of Labor.

18.     The statements made by Mr. Gristina in the email dated July 17, 2009, and Bates stamped by the Government as US_Martin0000566-67, were within the scope of the duties of Mr. Gristina on July 17, 2009, but were pre-decisional, internal, and preliminary estimates, limited to the case at issue in the email because field office employees are not authorized to make general policy statements for DOL; they do not necessarily reflect the official position or policy of the Wage and Hour Division, or the Department of Labor.

19.     The questions and answers stamped by the Government as US_Martin0000568-69 were prepared by employees of the Wage and Hour Division of the Employment Standards Administration of the U.S. Department of Labor in or about July 2009.  The statements made in this document, which was prepared as a draft, were within the scope of the duties of the Wage and Hour Division in July 2009, but were pre-decisional, internal, and preliminary and limited to the case at issue; they do not necessarily represent the official position or policy of the Wage and Hour Division, or the Department of Labor.

20.     The letter stamped by the Government as US_Martin0000572-73 is the letter to which the letter from Steven J. Mandel Bates stamped as US_Martin0000311-12 states that it responds (see paragraph 10 above).

21.     The letter stamped by the Government as US_Martin0000574-78 is the letter to which the letter from Steven J. Mandel stamped as US_Martin0000313-14 states that it responds (see paragraph 11 above).

Respectfully submitted,

s/Heidi R.Burakiewicz
HEIDI R. BURAKIEWICZ
Mehri & Skalet, PLLC
11250 Connecticut Ave., NW
Suite 300
Washington, D.C. 20036
(202) 822-5100

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

Steven A. Skalet
Michael Lieder
Taryn Wilgus Null
Mehri & Skalet PLLC
1250 Connecticut Avenue NW
Suite 300
Washington, DC 20036
(202) 822-5100

s/Joseph E. Ashman
JOSEPH E. ASHMAN
ERIN MURDOCK-PARK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
(202) 353-7578
jeashman@usdoj.gov

Attorneys for Plaintiffs

March 30, 2016

Attorneys for Defendant